# Steve Zissou & Associates

42-40 Bell Boulevard | Suite 302 | Bayside | New York | 11361 | 718.279.4500 | stevezissou@stevezissouesq.com

February 8, 2026

**BY ECF**

The Honorable Joan M. Azrack
United States District Court
100 Federal Plaza
Central Islip, New York 11722

    Re:    *United States of America v. Akeem Chambers*, Case No. 23 Cr. 157 (JMA)

Your Honor,

    Defendants Akeem Chambers, Jonathan Vazquez, and Jerell Shaw respectfully submit this joint motion in limine to preclude the Government from introducing, through remaining witnesses or in summation, tattoo evidence offered to show an "affinity for guns and violence" or a generalized propensity for criminal behavior. This letter constitutes a fourth motion in limine, following our motions dated January 21, January 22, and February 5, 2026.

    Mr. Chambers, Mr. Vazquez, and Mr. Shaw do not challenge the admission of tattoo photographs depicting gang names, initials, or symbols that are probative of enterprise membership—several such exhibits have already been admitted by stipulation. *See*, e.g., GX 8010. Rather, the defendants seek to exclude tattoo evidence and related social media content that crosses the line from permissible affiliation evidence into impermissible propensity evidence, as defined by the Honorable Brian M. Cogan in *United States v. Ayers*, No. 20 Cr. 239, 2024 WL 1158686 (E.D.N.Y. Mar. 18, 2024) and the Second Circuit in *United States v. Smith*, 348 F. App'x 636 (2d Cir. 2009).

## Background

    On February 5, 2026, the Government read Stipulation GX 8010 into the record and published the following tattoo photographs to the jury through cooperating witness Todd Brant: GX 676 (KTK tattoo on Mr. Chambers's arm); GX 199 (social media screenshot of the same KTK tattoo with caption); GX 681 (Raiders/Babiiez tattoo on Mr. Vazquez's arm); GX 682 (GMF with anchor above Vazquez's eyebrow); GX 683 (Chucky head symbol on Mr. Vazquez's arm); GX 684 ("Guddaville" tattoo on Mr. Vazquez's arm); GX 401 ("60" tattoo on Mr. Shaw's arm); and GX 669 ("R60" tattoo on Mr. Shaw's arm). The stipulation addressed authentication only, and the exhibits were admitted without objection.

    With one exception, each of these exhibits depicts a gang name, set, or symbol and is probative of enterprise membership under the framework described below. The exception is

GX 199. While the underlying KTK tattoo (already shown to the jury through GX 676) is a permissible affiliation exhibit, GX 199 is a social media post in which the tattoo is accompanied by a caption reading: "All y'all know who shot y'all. Tell the opps pick up they partners. Tatted on me, but this shit is deeper than the surface." Assistant United States Attorney Michael Maffei walked Todd Brant through this caption line-by-line, eliciting testimony that "the people that we beefing with, they know who shot them" and that the post constituted "[t]aunting opposition." Tr. 997–998. This is not affiliation evidence—it is a boast about shootings, offered to show a propensity for violence.

### The Governing Legal Framework

The law in this Circuit draws a clear line between tattoo evidence that is probative of gang membership and tattoo evidence that is offered to show a defendant's propensity for violence.

In *Ayers*, Judge Cogan addressed this precise issue in a RICO prosecution tried in this courthouse. The court held that "[p]hotographs of tattoos that indicate [gang] affiliation, including the name of and initials of the gang, shall be admitted." 2024 WL 1158686, at *12. But the court excluded tattoo evidence the Government offered to show defendants' "affinity for guns and violence" and "disdain for law enforcement," holding that "the Government will use these photographs to imply that defendants have a generalized propensity for criminal behavior and violence, which is impermissible." *Id.* The court excluded defendant Harrell's anti-law-enforcement tattoo and defendant Gillespie's "922g" tattoo (a reference to the felon-in-possession statute), finding the Government's "very purpose in offering evidence of the tattoo is to promote that [propensity] inference." *Id.*

Judge Cogan relied on the Second Circuit's decision in *Smith*, which held it was error to admit a photograph of a tattoo depicting a skeleton firing a weapon with the words "D'EVILS WITHIN." 348 F. App'x at 638–39. The district court had admitted the photograph to show the defendant "chosen to display affirmations of this kind of conduct. The Second Circuit reversed, holding: "The Government has not articulated a way in which this evidence is relevant that does not rely on an impermissible propensity inference; thus, the evidence should not have been admitted." *Id.* at 639.

The Seventh Circuit's decision in *United States v. Thomas*, 321 F.3d 627 (7th Cir. 2003), is the most thorough appellate analysis of this issue. The court reversed a conviction where the Government introduced a photograph of the defendant's tattoo depicting two crossed revolvers, finding that "[w]e fail to see how the redacted photo of the tattoo was admitted for any purpose other than to establish [defendant's] propensity to possess guns. The district court's reasons for admitting the photograph . . . all circle back to one basic proposition—because [defendant] tattooed a pair of revolvers on his forearm, he is the kind of person who is likely to possess guns." *Id.* at 631–32.

Critically, the Sixth Circuit has applied this same distinction in a RICO case. In *United States v. Rios*, 830 F.3d 403 (6th Cir. 2016), the court acknowledged that gang-affiliation

tattoos are "highly relevant" in RICO prosecutions because the Government must prove the enterprise's existence and each defendant's association with it. The court therefore admitted "garden-variety" Latin Kings tattoos depicting symbols, sayings, and initials. *Id.* at 414. But the court excluded under Rule 403 a "scale tattoo" depicting religious symbols outweighed by a gun, drugs, and money, finding that "potential for unfair prejudice in the form of a propensity inference also remains quite high as the tattoo is an elaborate depiction of firearms and drugs." *Id.* at 415. Notably, the *Rios* court flagged as compounding the error the Government's use of the tattoo in closing argument: "Look at his arm . . . What is winning the battle? Guns, drugs, money. That's how you know Antonio Rios is telling you he's guilty." *Id.* at 415–16.

## Application

The case law establishes a straightforward framework: tattoo evidence showing *what gang a defendant belongs to* is admissible enterprise evidence in a RICO prosecution; tattoo evidence showing a defendant's *affinity for violence, guns, or criminal conduct* is impermissible propensity evidence excludable under Rules 403 and 404(b).

Mr. Chambers, Mr. Vazquez, and Mr. Shaw make three specific requests:

First, the Court should preclude the Government from introducing, through any remaining witness, additional tattoo photographs or testimony about defendants' tattoos beyond those already admitted to show gang affiliation. If the Government seeks to introduce additional tattoo evidence, it should be required to proffer the specific relevance outside the presence of the jury so the Court can apply the *Ayers*/*Smith* framework before the evidence reaches the jury.

Second, with respect to GX 199—the social media post already published to the jury—defendants request a limiting instruction advising the jury that the exhibit may be considered only as evidence of Mr. Chambers's association with KTK and not as evidence of a propensity for violence. The caption's reference to shootings and "taunting opposition" was elicited for no purpose other than to suggest that Mr. Chambers is the kind of person who commits acts of violence—precisely the inference *Smith*, *Thomas*, and *Ayers* forbid. This exhibit is directly analogous to the scale tattoo excluded in *Rios*: a gang-related image weaponized through violent context into propensity evidence.

Third, the Government should be precluded from referencing any tattoo evidence in summation to argue that defendants are disposed to commit acts of violence. The *Rios* court specifically identified the Government's closing-argument use of tattoo evidence as compounding the prejudicial error. 830 F.3d at 415–16. Here, AUSA Maffei's line-by-line elicitation of the GX 199 caption—"y'all know who shot y'all," "tell the opps pick up they partners"—was conducted with the evident purpose of providing fodder for a summation argument linking Mr. Chambers to shootings through his tattoo. That is the *Rios* problem, and it should be foreclosed now.

## Conclusion

Defendants do not seek to relitigate the admission of gang-affiliation tattoos that have properly entered the record. They ask only that this Court apply the well-established distinction between enterprise evidence and propensity evidence—as articulated by Judge Cogan in *Ayers*, the Second Circuit in *Smith*, and the Sixth Circuit in *Rios*—to preclude tattoo evidence offered for impermissible purposes going forward, and to issue a limiting instruction with respect to GX 199.

Thank you very much for your consideration in this matter.

Respectfully submitted,

Steve Zissou, Esq.
Glenn Obedin, Esq.
Xavier Donaldson, Esq.

SZ/jc