UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

    - against –

AKEEM CHAMBERS,
        also known as "Luca,"                    **ORDER**
JERELL SHAW,                                23-CR-157 (JMA)
        also known as "Rells Fargo"
        and "Rells," and
JONATHAN VAZQUEZ,
        also known as "Chulo"
        and "Clutch."

                    Defendants.
-----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

Defendants' Daubert motion concerning Walter Collier and the ShotSpotter evidence challenges the sufficiency of the Government's expert disclosure and also seeks to preclude his testimony or limit his testimony in various respects. (ECF No. 443.) In the alternative, Defendants request a Daubert hearing.

The Court rejects Defendants' arguments that the Government's Rule 16(a)(1)(G) disclosure is deficient. Defendants received this expert disclosure on December 23, 2025. As an initial matter, Defendants' challenge to the Government's disclosure, which was raised for the first time on February 17—weeks into trial—is untimely. Additionally, the Court also denies this argument on the merits, finding that the Government's disclosure satisfies Rule 16(a)(1)(G).

Second, Defendants' mid-trial request for a Daubert hearing is denied as Defendants could have, and should have, raised this issue sooner. The Court notes that Defendants also raised belated requests for Daubert hearings in the midst of trial concerning the Government's firearms/toolmark experts. The Court denied Defendants' request for a Daubert hearing in connection with one of these firearms experts. However, in an abundance of caution, the Court

granted that request with respect to Jonathan Fox notwithstanding that it was untimely, based on, among factors, Defendants' representation that the Daubert hearing at issue would take an hour as well as the relative import of this evidence at trial.  However, given all the circumstances here, the Court finds that Defendants' mid-trial request for a Daubert hearing concerning Collier and the ShotSpotter evidence should be denied as untimely.

Third, even if the Court were to overlook the Defendants' failure to raise this issue earlier, Defendants' Daubert motion concerning the ShotSpotter evidence also fails on the merits.

Under the current version of Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court enumerated a list of additional factors bearing on reliability that district courts may consider:

> (1) whether a theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007) (cleaned up).

Defendants challenge Collier's proposed testimony as being unreliable under Rule 702. Defendants assert that "ShotSpotter's core technology relies on a proprietary algorithm that

classifies sounds as gunfire or non-gunfire." (ECF No. 443 at 3.) Defendants point to a case where SoundThinking refused to comply with a defense request for "its classification and reclassification practices."[1] (Id. at 3.) Defendants also assert that ShotSpotter's purported 97% accuracy rate in detecting gunfire is not derived from independent scientific testing and that the Court is unable to evaluate the error rate in this technology. Defendants also note that human analysts sometimes modify and reclassify ShotSpotter data by reclassifying a sound as gunfire that was not originally classified as such by the ShotSpotter algorithm. All these points concern the reliability and accuracy of ShotSpotter's algorithm in determining whether an impulsive sound detected by the system was, in fact, gunfire.

At trial, the Government seeks to introduce not just Collier's testimony and the ShotSpotter Forensic Reports, but all the underlying audio recordings captured by ShotSpotter. The jury can listen to those recordings and can determine, along with all the other evidence in the record, whether the sounds detected and recorded by the ShotSpotter system were, in fact, gunfire. As the Government points out, in each of the ten incidents at issue, ballistics evidence was recovered at the scene and for some incidents there is also video evidence of the shooting. All that evidence corroborates the accuracy and reliability of the ShotSpotter evidence in this case.

ShotSpotter's refusal to "'subject its product to independent testing' . . . slightly weighs against reliability[,] . . . but does not obligate the Court to find ShotSpotter technology unreliable." United States v. Pena, No. 21-CR-176, 2024 WL 4132379, at *2 (E.D.N.Y. Sept. 9, 2024) (cleaned up).

The Court also notes that the ShotSpotter Forensic Reports explain that the ShotSpotter system classifies the impulsive sounds that are detected as "possible gunfire" and that a human

---

[1] The Court notes that nothing in the instant record indicates that Defendants ever attempted to subpoena any such information from SoundThinking.

operator then "reviews the incident to classify it as gunfire or to dismiss it as not gunfire," before it is reported to a customer. (Forensic Report for May 19, 2021 at 2.) The reports' conclusions also include the explicit caveat that "acoustic data analysis of a gunfire incident is complex and not comprehensive" and that the report's conclusions "should be corroborated with other evidentiary sources such as recovered shell casings, and witness statements." (Id. at 9.) The Court's ruling assumes that the Government will elicit all these points in laying a complete foundation on direct examination.[2]

Defendants fault the ShotSpotter Forensic Reports for not identifying whether any of the alerts in this case were reclassified, modified, or subject to analyst override. The reports, however, do identify the information that was calculated and reported in real time and also provide additional details about "post-processing analysis." (Forensic Report for February 8, 2022 at 4.) For example, the report concerning the February 8, 2022 incident states that the audio recordings automatically stored by the ShotSpotter system were truncated, "fuller" recordings were subsequently retrieved, and the report's ultimate conclusions took that additional data into account. (Id.) Again, the jury can listen to these "fuller" recordings that form the basis for the ultimate conclusions in that report.

Defendants' Daubert challenge, which is set out above, concerns the reliability of ShotSpotter's algorithm that classifies sounds as gunfire or non-gunfire. The other aspect of the ShotSpotter system calculates the location where the impulsive sounds at issue originated from. As in Pena, Defendant do "not challenge the underlying GPS triangulation methodology upon

---

[2] Defendants' motion requested that Collier be required to disclose some of this information on direct examination. (ECF No. 443 at 7.) Defendants make a similar request that Collier also disclose, on direct examination that: (1) "the ShotSpotter algorithm is proprietary"; (2) the algorithm has not been "independently validated; (3) and "human analysts may modify, override, or reclassify the system's automated determinations." (Id.) The Court also assumes that, as part of his direct examination, Collier will disclose that the ShotSpotter algorithm is proprietary as well as the role that human analysts can play in the ShotSpotter process, including the role of human analysts can play in determining whether an impulsive sound is (or is not) classified as gunfire. As for Defendants' criticisms concerning the lack of independent validation, that is an appropriate ground for cross-examination.

4

which the ShotSpotter location is based— a methodology that other courts have found reliable under Daubert and equivalent state evidentiary rules." Pena, 2024 WL 4132379, at *2.

Finally, the Court is not persuaded by Defendants' argument that the alleged prejudicial impact of this evidence outweighs its probative value under Federal Rule of Evidence 403

The Court denies Defendants' request for a Daubert hearing and permits the Government to introduce Collier's testimony and the ShotSpotter evidence as set forth above.

As in Pena, a Daubert hearing is not necessary here. "Daubert does not require a district court to hold a Daubert hearing as long as the district court ascertains the reliability of the expert's methodology," and such approach may particularly appropriate where "'at the time the expert testimony is presented to the jury, a sufficient basis for allowing the testimony is on the record.'" Pena, 2024 WL 4132379, at *2 (quoting United States v. Williams, 506 F.3d 151, 161 (2d Cir. 2007)).

Dated:  March 16, 2026
Central Islip, New York

_____/s/   (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE